IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CONTINENTAL CASUALTY        )
COMPANY,                    )
                            )
        Plaintiff,          )
                            )
    v.                      )    CASE NO. 2:10-CV-566-WKW
                            )              [WO]
HOMECORP MANAGEMENT, INC.,  )
HERBERT SCHEUER, JAMES      )
CURTIS, MICHAEL GOLDNER,    )
STEPHEN COLEMAN, W. LLOYD   )
STRICKLAND, VAN E. HART JR.,)
HOSEA HOLDINGS, LLC, LARRY  )
BLUMBERG, LESLIE BLUMBERG,  )
CWCAPITAL MORTGAGE          )
SECURITIES I, LLC,          )
                            )
        Defendants.         )

## MEMORANDUM OPINION AND ORDER

## I.  INTRODUCTION

Before the court is Plaintiff Continental Casualty Company's Motion for

Summary Judgment (Doc. # 69), which is accompanied by a supporting brief and

evidentiary submissions (Docs. # 70, 72).  Defendant HomeCorp Management, Inc.

filed a response in opposition (Doc. # 76), which Defendants Van E. Hart, Jr., Hosea

Holdings, LLC, Larry Blumberg, and Leslie Blumberg adopted (Docs. # 77, 78).[1]

---

[1]  Defendants CWCapital Mortgage Securities I, LLC and James Curtis have not filed
responses to Continental Casualty's Motion for Summary Judgment.  HomeCorp Management

Continental Casualty replied (Doc. # 81) and filed a supplemental evidentiary submission (Doc. # 82).

The parties contest the rights and duties under an errors and omissions insurance policy ("Policy") issued by Continental Casualty to HomeCorp Management. Continental Casualty contends that it has no duty to defend or indemnify HomeCorp Management or any of its covered insureds in two underlying state court actions.[2] HomeCorp Management admits that it does not seek coverage under the Policy for the breach of contract claims or claims for indemnity in the underlying lawsuits.[3] (Def.'s Resp. Br. 32, 34.) The court only will address the rights and duties of the parties in the context of the disputed claims.[4] After careful

_____

made arguments on behalf of Defendants Scheuer, Goldner, Coleman, and Strickland in its response. Although not explicitly stated, and because the court has an independent duty to ensure summary judgment is or is not appropriate, the court presumes for purposes of this motion that HomeCorp Management also represented the interests of these individual Defendants in its response.

[2] The underlying lawsuits are *Hart et al. v. CWCapital, LLC, et al.*, CV-09-900311 ("*Hart* Action"), and *Blumberg et al. v. CWCapital, LLC, et al.*, CV-09-900305 ("*Blumberg* Action"), which are both pending in the Circuit Court of Houston County, Alabama. These cases have been consolidated. (Order (Pl.'s Ex. 9).)

[3] HomeCorp Management does not contend that Curtis is an insured under the Policy. (Def.'s Resp. Br. 33 n.8.) HomeCorp Management also concedes that it is not seeking coverage for the following claims: (1) the Cross-Claim in the *Blumberg* Action; (2) Counts 9, 10, 11, and 12 of the Second Amended Complaint in the *Hart* Action; and (3) Counts 4, 6, 8, and 9 of the Second Amended Complaint in the *Blumberg* Action.

[4] These disputed claims include Counts 5, 6, 7, and 8 of the *Hart* Second Amended Complaint and Counts 5 and 7 of the *Blumberg* Second Amended Complaint as they pertain to HomeCorp Management, Scheuer, Goldner, Coleman, and Strickland.

consideration of the arguments of counsel, the applicable law and the record as a whole, the court finds that Continental Casualty's Motion for Summary Judgment is due to be partially granted with the balance of the claims to be dismissed.

## II.  JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332, 28 U.S.C. § 2201, and 28 U.S.C. § 2202.  Personal jurisdiction and venue are adequately pleaded and not contested.

## III.  STANDARD OF REVIEW

On summary judgment, the evidence and the inferences from that evidence must be viewed in the light most favorable to the nonmovant.  *See Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).  Hence, "'facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.'" *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) (quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000)).

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation and internal quotation marks

omitted); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24.

If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008); Fed. R. Civ. P. 56(c). When the nonmovant fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to its case and on which the nonmovant will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*,

477 U.S. at 323 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

## IV.  BACKGROUND[5]

### A.   HomeCorp Management and HomeCorp Affordable

HomeCorp Management was created by Defendants Michael Goldner and Herbert Scheuer in 1996 to "engage in the business of owning, managing, improving, holding for investment, acting and otherwise dealing in real estate of all types and kinds."  (Articles of Incorporation of HomeCorp Management, Articles II(a) & V (Pl.'s Ex. 10).)  Scheuer serves as the president of HomeCorp Management with Goldner as the vice president/secretary.  (Resp. of HomeCorp Management to Pl.'s Interrog. 2 (Pl.'s Ex. 17).)   The two are the sole shareholders of HomeCorp Management.  (Aff. of Michael Goldner ¶ 2 (Def.'s Ex. 1).)  Defendants Stephen Coleman and W. Lloyd Strickland were employees of HomeCorp Management during the policy period.[6]  (Aff. of Michael Goldner ¶ 11.)

---

[5]  The actual facts may be different than those stated here, although the facts as presented are largely undisputed.  *See Lee*, 284 F.3d at 1190.

[6]  It is unclear what positions Coleman and Strickland held with HomeCorp Management. Continental Casualty served Strickland and Coleman with interrogatories, asking them to state the basis for their contention that they were "Insureds" under the Policy.  On March 23, 2011, Coleman and Strickland both responded that they were an insured under the Policy but neither asserted that he was an employee of HomeCorp Management.  (Answers to Interrogs. (Pl.'s Suppl. Exs. 2, 3).)  However, Goldner's August 3, 2011 Affidavit states that Coleman and Strickland were employees of HomeCorp Management.  Because Defendants are the nonmoving party, it will be inferred that Coleman and Strickland were employees of HomeCorp

In 2005, Scheuer, Goldner, Coleman, and Strickland created HomeCorp Affordable Communities, LLC[7] for the purpose of engaging "in the business of purchasing, owning, developing, constructing improvements, mortgaging, and real property brokerage," developing "multi-family and single family residential developments," and conducting "any and all commercial and residential property development services." (Articles of Organization of HomeCorp Affordable, Articles III(a), V, & VIII (Pl.'s Ex. 11).) Scheuer, Goldner, Coleman, and Strickland each own a 17.5% interest in HomeCorp Affordable and serve as the company's managers. (Ownership Chart (Pl.'s Ex. 16, Def.'s Ex. 2).[8]) HomeCorp Affordable has four other members:  Five Star Investments, LLC, which is owned by Defendant James Curtis; Defendants Larry Blumberg and Leslie Blumberg (the "Blumbergs"); and Defendant Hosea Holdings, LLC, which is owned by Defendant Van E. Hart, Jr.  (Ownership Chart.) Defendants adopted an operating agreement for HomeCorp Affordable, which set out the distributions of net cash flow to Scheuer, Goldner, Coleman, and Strickland as initial members.  (HomeCorp Affordable's Operating Agreement (Pl.'s Ex. 14).)

---

Management as this entitles them to coverage under the Policy.

[7] HomeCorp Affordable is not a party to this action.

[8] These exhibits are the same and contain a chart of the entities that own Oak Creek Partners, LLC.

**B.**   **Acquisition of Oak Creek Apartments**[9]

In March 2006, HomeCorp Affordable entered into a contract to purchase Oak Creek Apartments, a 216-unit apartment complex located in Douglasville, Georgia. To close on the purchase of Oak Creek Apartments and to obtain financing from Defendant CWCapital, LLC, HomeCorp Affordable "created a complex structure of related entities," which included Oak Creek Partners, LLC, Oak Creek Home, LLC, and Douglas Company, LLC.  (*Hart* Action Second Am. Compl. ¶ 25.)  HomeCorp Affordable owned 92% of Oak Creek Home and also served as Oak Creek Home's manager.  (Ownership Chart; Oak Creek Home, LLC's Operating Agreement (Pl.'s Ex. 15).)  Oak Creek Home and Douglas Company each owned a 50% interest in Oak Creek Partners, with Oak Creek Home serving as its manager.  (Ownership Chart.) Oak Creek Partners was the entity that ultimately purchased Oak Creek Apartments. The apartments were to be managed by HomeCorp Management.

The purchase of the property was financed through a combination of equity and debt.  To fund the equity portion, HomeCorp Affordable raised more than $1,750,000 through the sale of membership interests in Douglas Company.  To fund the debt portion, Oak Creek Partners obtained a $7,200,000 loan from CWCapital.  (Cash

---

[9]   Unless otherwise noted, these facts are alleged in the complaints of the underlying lawsuits.  (*See* Pl.'s Exs. 2, 3.)

Management Agreement (Def.'s Ex. 5).)  The collateral on the loan from CWCapital included the apartment complex and personal guaranties.  Initially, CWCapital required guaranties from "key principals," which included Scheuer, Goldner, Coleman,[10] and Strickland (the managers of HomeCorp Affordable), as well as Curtis (a member of HomeCorp Affordable).  After CWCapital determined that these key principals had insufficient assets to support the loan, CWCapital required HomeCorp Affordable to find additional guarantors.  HomeCorp Affordable, through Scheuer and Coleman, asked Hart and the Blumbergs to sign guaranties.  Scheuer told Hart and the Blumbergs that the guaranty would be "non-recourse" with standard carve-outs, which meant that CWCapital would be barred from recovering directly from these guarantors, with limited exceptions.  Relying on these representations, Hart and the Blumbergs signed the guaranties.

Pursuant to the loan requirements, Oak Creek Partners executed a Cash Management Agreement to regulate the collection and use of all rents and other income from Oak Creek Apartments, as well as property management expenditures. (Cash Management Agreement.)  HomeCorp Management, as the property manager, countersigned and agreed to comply with the Cash Management Agreement.  Oak

---

[10] Coleman was removed as a guarantor later because his "balance sheet would be harmful to CWCapital's plan to securitize and sell the loan."  (*Hart* Action Second Am. Compl. ¶ 34.)

Creek Partners also executed a Property Management Agreement with HomeCorp Management.   (Property Management Agreement (Def.'s Ex. 6).)   Under this agreement, HomeCorp Management's duties included preparing budgets, monthly income, expense and cash flow statements, as well as annual profit and loss statements, employing personnel to maintain and operate the property, maintaining the buildings and grounds, insuring the property, and collecting rent.   (Property Management Agreement, Article III.)

## C.   The Underlying Lawsuits

The venture was not successful.  By 2009, there was a $5.28 million shortfall resulting from the operation of Oak Creek Apartments.  CWCapital called on Oak Creek Partners and then the individual guarantors to make up the difference.  It was then that Hart and the Blumbergs discovered that the guaranties they signed were drafted more broadly than Scheuer represented.  The guaranties were not "non-recourse" and essentially held the guarantors liable for the economic failure of Oak Creek Apartments.

In 2009, Hart, Hosea Holdings and the Blumbergs filed suit in the Circuit Court of Houston County, Alabama.  In Counts 5, 6, and 7 of the *Hart* Action, Hart and Hosea Holdings bring claims against Coleman, Scheuer, and HomeCorp Management for misrepresentation, concealment and suppression of material facts, and negligence.

9

(*Hart* Action Second Am. Compl. ¶¶ 110–25 (Pl.'s Ex. 2).)  Count 8 of the *Hart*
Action alleges that Coleman engaged in constructive fraud in carrying out his notary
public duties.  *(Hart* Action Second Am. Compl. ¶¶ 126–31.)  In Counts 5 and 7 of the
*Blumberg* Action, the Blumbergs allege that Scheuer, Goldner, Coleman, and
Strickland negligently or intentionally failed to disclose material facts and that they
breached their duty of due care as managing members of HomeCorp Affordable
and/or as officers of HomeCorp Management.  (*Blumberg* Second Am. Compl.
¶¶ 69–72, 77–80 (Pl.'s Ex. 3).)

**D.   <u>The Policy</u>**

Continental Casualty issued Real Estate Professional Errors and Omissions
Policy No. 2541496570 to HomeCorp Management for the claims-made period from
September 15, 2009, to September 15, 2010.  (Policy, Pl.'s Ex. 1.)  The Policy
provides coverage for HomeCorp Management and "any person who is or becomes
[HomeCorp Management's] partner, officer, director, employee or independent
contractor during the policy period" but "only while rendering professional real estate
services[11] on [HomeCorp Management's] behalf for others."  (Policy 5 (emphasis

---

[11] Professional real estate services is defined under the Policy as "those services rendered
by an Insured for others as a real estate agent, real estate broker, real estate personal assistant,
real estate consultant or counselor, real estate appraiser, property manager, real estate leasing
agent, short term escrow agent, mortgage broker or auctioneer of real property, provided that all
necessary licenses or certifications are held by the Insured at the time of the act or omission
giving rise to the claim.  Professional real estate services also include services rendered by an

omitted).)  Under the Policy, Continental Casualty has a duty to defend those covered by the Policy against a claim, and to indemnify the insureds if they are found legally liable.  (Policy 1.)  However, Section V of the Policy lists exclusions under which Continental Casualty is not obligated to defend or indemnify an insured against a claim.  (Policy 6–8.)  The relevant exclusions will be discussed later in this opinion.

## V.  DISCUSSION

Continental Casualty contends that summary judgment is due to be entered in its favor and that the court should enter a declaratory judgment stating that, under the Policy, Continental Casualty has no duty to defend or indemnify Defendants HomeCorp Management, Scheuer, Goldner, Coleman, or Strickland in the underlying lawsuits.  In particular, Continental Casualty argues that the Policy contains three exclusions that bar coverage for the underlying lawsuits.  Continental Casualty also argues that because it is entitled to summary judgment, HomeCorp Management's counterclaim, which seeks a declaration from the court that the underlying lawsuits are covered by the Policy, should be dismissed.   (Pl.'s Summ. J. Br. 1–2.)

---

Insured for others as a notary public; or member of a formal real estate accreditation, standards review or similar real estate board or committee.  Services as a construction manager are not professional real estate services."  (Policy 5 (emphasis omitted).)

Defendants[12] argue that the claims in the underlying lawsuits are covered by the Policy and that none of the Policy's exclusions applies.  (Def.'s Resp. Br. 11.)

Part A will address the court's discretion under the Declaratory Judgment Act to decide the indemnity issue.  Part B will set out the applicable Alabama law for cases involving an insurance company's duty to defend.  Finally, a determination of whether the Policy's exclusions apply will be made in Part C.

## A.   Discretion to Decide the Indemnity Issue

Courts treat an insurance company's duty to defend and duty to indemnify as distinct and analyze them separately.  *See Allstate Indem. Co. v. Lewis*, 985 F. Supp. 1341, 1349 (M.D. Ala. 1997).  A controversy exists regarding the duty to defend when the insured seeks a defense from an insurance company, but the insurance company denies that it is obligated.  *See Am. Fid. & Cas. Co. v. Pa. Threshermen & Farmers' Mut. Cas. Ins. Co.*, 280 F.2d 453, 461 (5th Cir. 1960).[13]

In contrast, courts have declined to exercise their discretion under the Declaratory Judgment Act to decide questions about the duty to indemnify when the

---

[12]  While HomeCorp Management is the only Defendant that filed a substantive response, "Defendants" refers to Scheuer, Goldner, Coleman, and Strickland, as well as to Hart, Hosea Holdings, and the Blumbergs who have adopted the arguments contained in HomeCorp Management's response brief.  *See supra* note 1.

[13]  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

underlying action is pending.  *See, e.g.*, *Nationwide Mut. Fire Ins. Co. v. Dillard House, Inc.*, 651 F. Supp. 2d 1367, 1373 (N.D. Ga. 2009) ("[T]he court will follow the 'wealth of authority' counseling against exercising jurisdiction over the premature issue of the duty to indemnify . . . ."); *Pa. Nat'l Mut. Cas. Ins. Co. v. Roberts Bros., Inc.,* 550 F. Supp. 2d 1295, 1303 (S.D. Ala. 2008) ("[I]n the exercise of the Court's sound discretion, [Plaintiff's] claims for a declaratory judgment on the question of its duty to indemnify are dismissed without prejudice."); *Emp'rs Mut. Cas. Co. v. All Seasons Window & Door Mfg., Inc.*, 387 F. Supp. 2d 1205, 1211–12 (S.D. Ala. 2005) ("It is simply inappropriate to exercise jurisdiction over an action seeking a declaration of the plaintiff's indemnity obligations absent a determination of the insureds' liability."), *but see Evanston Ins. Co. v. N. Lake Condo Club*, *LLC*, No. 3:09cv310, 2009 WL 4059001, at *3 (M.D. Ala. Nov. 20, 2009) (rejecting an argument that the indemnity issue was premature where the underlying suits were pending because the duty to indemnify and defend were governed by the same insurance policy provisions).  Resolving the duty to indemnify before the underlying case is concluded could potentially waste resources of the court because the issue evaporates if the insured prevails in the underlying lawsuit.  *Guar. Nat'l Ins. Co. v. Beeline Stores, Inc.*, 945 F. Supp. 1510, 1515 (M.D. Ala. 1996).  Until the underlying suit is resolved, the duty to indemnify presents "nice and intriguing questions which

13

today may readily be imagined, but may never in fact come to pass." *Am. Fid.*, 280 F.2d at 461.  Continental Casualty's duty to indemnify is presently an abstract, academic question.  Thus, in the exercise of the court's discretion, the duty to indemnify claim will be dismissed without prejudice, and the court will address Continental Casualty's duty to defend.[14]

## B.   <u>Alabama Insurance Law</u>[15]

Insurance contracts are governed by the general rules of contracts and "are construed so as to give effect to the intention of the parties."  *Attorneys Ins. Mut. of Ala., Inc. v. Smith, Blocker & Lowther, P.C.*, 703 So. 2d 866, 870 (Ala. 1996). Alabama law is clear that "'insurance companies have the right, in the absence of statutory provisions to the contrary, to limit their liability and write policies with narrow coverage; the insured has the option to purchase the policy or look

---

[14] Continental Casualty requests that the court defer a ruling on the question of the duty to indemnify should the court find that the claim is premature and cites *Atlantic Casualty Insurance Co. v. GMC Concrete Co.*, No. 07-0563-WS-B, 2007 WL 4335499 (S.D. Ala. Dec. 7, 2007) (Steele, J.).  (Pl.'s Summ. J. Br. 15 n.10.)  That case is distinguishable.  In *GMC Concrete*, the defendants filed a motion to dismiss the declaratory judgment action filed by the insurance company.  Judge Steele found that the duty to defend issue was ripe, but that the duty to indemnify issue was premature because the underlying lawsuit was not resolved.  2007 WL 4335499, at *5.  Judge Steele retained jurisdiction on the duty to indemnify issue "until the earlier of (a) final disposition of the [underlying lawsuit]; or (b) a ruling on the duty to defend." *Id.* at *6.  In *GMC Concrete*, the duty to defend claim survived the motion dismiss, and thus, was not resolved.  The approach adopted by Judge Steel cannot be employed here because this opinion will provide a final disposition on the duty to defend.

[15] It is undisputed that Alabama law governs the issue of whether Continental Casualty owes HomeCorp Affordable, Scheuer, Goldner, Coleman, or Strickland a duty to defend.  (*See* Def.'s Resp. Br. 10.)

elsewhere.'" *Int'l Paper Co. v. QBE Ins. Corp.*, Nos. 3:09-CV-347-WKW, 3:07-CV-206-WKW, 3:05-CV-1001-WKW, 2010 WL 1856193, at *3 (M.D. Ala. May 5, 2010) (quoting *Cotton States Ins. Co. v. Diamond Hous. Mobile Homes*, 430 F. Supp. 503, 505 (N.D. Ala. 1977)); *see also Hooper v. Allstate Ins. Co*, 571 So. 2d 1001, 1002 (Ala. 1990) ("[I]nsurance companies have the right to limit the coverage offered through the use of exclusions in their policies.").

An insurer's duty to defend "is determined primarily by the allegations contained in the complaint" of the underlying lawsuit.[16] *Hartford Cas. Ins. Co. v. Merchs. & Farmers Bank*, 928 So. 2d 1006, 1009 (Ala. 2005) (internal quotation marks omitted). The court may also "look [outside the bare allegations of the underlying lawsuit's complaint] to facts which may be proved by admissible evidence." *Id.* at 1010. The insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy, *Colonial Life & Accident Ins. Co. v. Collins*, 194 So. 2d 532, 535 (Ala. 1967), while the insurer bears the burden of proving the applicability of any policy exclusion. *Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc.*, 990 F.2d 598, 605 (11th Cir. 1993). "Exclusions are to be interpreted as narrowly as possible, so as to provide maximum coverage for the

---

[16] Under Alabama law, "it is well established that [an] insurer's duty to defend is more extensive than its duty to pay." *U.S. Fidelity & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala. 1985). The Policy's exclusion language applies equally to Continental Casualty's duty to defend and duty to indemnify.

15

insured, and are to be construed most strongly against the insurance company that drafted and issued the policy." *Am. States Ins. Co. v. Martin*, 662 So. 2d 245, 247 (Ala. 1995).

## C.   **The Policy Exclusions**

For purposes of this opinion, it will be assumed that HomeCorp Management, Scheuer, Goldner, Coleman, and Strickland are covered under the Policy for the disputed claims in the underlying lawsuits.[17]   Continental Casualty's duty to defend turns on whether any of the Policy's exclusions apply.

### 1.   *Financial Interest Exclusion*

Under the Policy's financial interest exclusion, Continental Casualty has no duty to defend "any claim . . . arising out of the actual or attempted purchase of property by . . . any entity in which any Insured has a financial interest . . . provided that such financial interest existed at the time of the act or omission giving rise to the claim."  (Policy ¶ V.L. (emphasis omitted).)

The parties agree that the claims of the underlying lawsuits arise out of the purchase of Oak Creek Apartments.  However, the source of contention between the

---

[17]  It is undisputed that HomeCorp Management is an insured under the Policy, and for purposes of summary judgment, Continental Casualty does not dispute that Goldner and Scheuer satisfy the definition of an insured.  (Pl.'s Summ. J. Br. 17 n.11.)  For purposes of this opinion, it will be assumed that Strickland and Coleman also qualify as insureds.

16

parties is the meaning of "a financial interest." The Policy does not define this term. It is undisputed that Scheuer, Goldner, Coleman, and Strickland each have a 17.5% membership interest in HomeCorp Affordable, and that HomeCorp Affordable owns 92% of Oak Creek Home which, in turn, owns 50% of Oak Creek Partners. Continental Casualty argues that this exclusion applies because the individual Defendants "had financial interests in Oak Creek Partners *through* HomeCorp Affordable and Oak Creek Home." (Pl.'s Summ. J. Br. 18.) Defendants respond that the exclusion does not apply because the individual Defendants did not have a membership interest in Oak Creek Partners (the entity that purchased Oak Creek Apartments) and by Alabama law, have no interest in specific limited liability company property. (Def.'s Resp. Br. 18–19.)

Under Alabama law, courts should construe undefined terms in a policy "according to the meaning a person of ordinary intelligence would reasonably give it." *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). Alabama courts often turn to dictionary definitions to determine this meaning. *See, e.g.*, *id.* at 1143–44 (citing Black's Law Dictionary and Merriam-Webster's Collegiate Dictionary to determine the meaning of "forcible entry" under an insurance policy); *see also Carpet Installation & Supplies of Glenco v. Alfa Mut. Ins. Co.*, 628 So. 2d 560, 562 (Ala. 1993) ("What is a dictionary definition if not an assertion of that very

meaning that an ordinary person would give a particular word?").   "Financial interest"[18] has been defined as either "(1) a monetary right, title, or legal share in the [entity]; (2) a monetary advantage, profit, and responsibility, i.e., a monetary stake or claim in the [entity]; or (3) a monetary share of ownership or control in the [entity]." *JAM Inc. v. Nautilus Ins. Co.*, 128 S.W. 3d 879, 894 (Mo. Ct. App. 2004) (looking to Black's Law Dictionary to define "financial interest" and Webster's Third New International Dictionary of the English Language Unabridged to define "interest"); *see also Continental Cas. Co. v. Bowen*, No. 2:09-cv-00810-TC, 2011 WL 222340, at *4 (D. Utah Jan. 21, 2011) (quoting *JAM Inc.'s* definition of "financial interest"); Black's Law Dictionary 828 (8th ed. 2004) (defining "financial interest" as "[a]n interest equated with money or its equivalent; esp., an interest in the nature of an investment").

---

[18]   The question of whether a contractual provision, such as an insurance policy exclusion, is ambiguous is a matter of law for the court to decide. *Herrera*, 912 So. 2d at 1143. However, if the provision at issue is ambiguous, "the determination of the true meaning of the contract is a question of fact" for the jury. *McDonald v. U.S. Die Casting & Dev. Co.*, 585 So. 2d 853, 855 (Ala. 1991).  To determine whether a provision in an insurance contract is ambiguous, the court applies "the common interpretation of the language alleged to be ambiguous." *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 309 (Ala. 1999).  Ambiguity exists "only if the policy's provisions are reasonably susceptible to two or more constructions or there is reasonable doubt or confusion as to their meaning." *Id.* at 308–09.  "[T]he mere fact that a word or a phrase used in a provision in an insurance policy is not defined in the policy does not mean that the word or phrase is inherently ambiguous." *Herrera*, 912 So. 2d at 1143.  The court finds that "financial interest" is unambiguous.  The definitions submitted by the parties are largely similar and do not lead to two or more constructions.  *See Carpet Installation & Supplies of Glenco*, 628 So. 2d at 562 (finding the term "rent" in an insurance policy to be unambiguous where the court "found no definition of that word restricting [the policy's] exclusion any more than the definitions cited in the trial court's order").

It is clear that Scheuer, Goldner, Coleman, and Strickland each had a monetary stake in Oak Creek Partners.  That stake can only be described as a financial interest. If Oak Creek Apartments did well, then by the terms of the operating agreements, a percentage of the profits would flow to Oak Creek Partners, then to Oak Creek Home, followed by HomeCorp Affordable and its members, which include the individual Defendants.  On the other hand, if Oak Creek Apartments performed poorly, CWCapital would look to Oak Creek Partners, as well as the individual guarantors, including Scheuer, Goldner, and Strickland, to satisfy the loan.  This is exactly what happened here.

In support of their position that the financial interest exclusion does not apply, Defendants present several arguments that are unpersuasive.  First, Defendants mis-characterize the exclusion's language as applying only when the insureds have a financial interest in the *property* purchased.  However, a plain reading of the exclusion indicates that the insured's financial interest must be in the *entity* that does the purchasing.  As discussed above, these individual defendants clearly had a financial interest in Oak Creek Partners, the entity that purchased Oak Creek Apartments.

Second, the financial interest exclusion is not defeated simply because Scheuer, Goldner, Coleman, and Strickland were not members of Oak Creek Partners.  *See Bowen*, 2011 WL 222340, at *4 ("Although an ownership interest in an entity would

certainly be considered a financial interest in that entity, ownership is not necessary to have a financial interest." (citing *JAM Inc.*, 128 S.W. 3d at 895)).  Defendants had a monetary stake or claim in Oak Creek Partners through HomeCorp Affordable.  *See JAM Inc.*, 128 S.W. 3d at 895 (holding that a financial interest existed because the plaintiff "had a monetary stake or claim in the insured real property as a shareholder in the corporation that owned the property").  Defendants' argument that Scheuer, Goldner, Coleman, and Strickland are only minority shareholders of HomeCorp Affordable does not eliminate their financial interest.  The exclusion applies whenever *any* insured has *a* financial interest in *any* entity, and it is immaterial whether the individual Defendants had a majority or minority shareholder's interest.  Thus, any financial interest in Oak Creek Partners will trigger the exclusion.  *See State Farm Fire & Cas. Co. v. Davis*, 612 So. 2d 458, 466 (Ala. 1993) (The terms "an" and "any" are synonymous when used in an insurance exclusion.).

Finally, Defendants' argument that the financial interest exclusion would be "an unforseen trap to deny insureds coverage any time an insured might own stock or shares in a company or mutual fund that might have some alleged attenuated interest in another company" is not persuasive.  (Def.'s Resp. Br. 21.) This case is not the hypothetical situation that Defendants have surmised.  The individual Defendants were wearing two hats, only one of which, activities as professional real estate

services agents, entitled them to insurance coverage.  In the insurance world, the investor/developer hat knocks the first hat off.  These individual Defendants were not passive investors or merely real estate agents but were the project's playmakers.  They were acutely aware of their financial interests tethered to Oak Creek Apartments through HomeCorp Affordable, Oak Creek Home, and Oak Creek Partners.  They created and were the managers of HomeCorp Affordable, which was the manager of Oak Creek Home, which in turn was the manager of Oak Creek Partners.  HomeCorp Affordable initially entered into a contract to purchase Oak Creek Apartments, and these men created the companies needed to obtain financing for the project. HomeCorp Affordable, through its managers, sought out the $7.2 million loan for Oak Creek Partners.  They were the initial guarantors on the loan.  Scheuer and Coleman also found additional guarantors when CWCapital required it.  Furthermore, Oak Creek Partners executed a Property Management Agreement with HomeCorp Management of which all four individual Defendants were board members or employees.

Though the parties did not argue it, the court cannot fathom how an essentially unlimited personal guaranty would not be a financial interest.  By definition, a guaranty is a monetary responsibility because it is "[a] promise to answer for the payment of some debt . . ., in case of the failure of another who is liable in the first

instance." Black's Law Dictionary (9th ed. 2009). The guaranties signed by Scheuer, Goldner, and Strickland gave them a monetary responsibility to repay the loan if and when Oak Creek Partners could not. *See Davenport & Harris Undertaking Co. v. Roberson*, 121 So. 733, 734 (Ala. 1929) ("[A] guarantor is only bound if and when the creditor is unable to collect from the principal debtor.") As discussed above, Scheuer, Goldner, and Strickland had a financial interest in Oak Creek Partners, because if it did not do well financially, they would be obligated to repay the loan.

Based on this undisputed evidence, the financial interest exclusion applies to Scheuer, Goldner, Coleman, and Strickland. Moreover, this exclusion applies to HomeCorp Management as well. The exclusion applies to *any* claim arising out of the purchase of property by an entity in which *any* insured has a financial interest. All the disputed claims arise out of the purchase of Oak Creek Apartments by Oak Creek Partners, in which four other insureds had a financial interest. Even though HomeCorp Management may not have had a financial interest in Oak Creek Partners, the exclusions still applies because Scheuer, Goldner, Coleman, and Strickland did. *See Davis*, 612 So. 2d at 466 (holding that a policy exclusion applied to both insureds where the provision excluded coverage for "an insured" under certain circumstances and only one insured fell under these circumstances). Thus, because of the financial

interest exclusion, Continental Casualty does not have a duty to defend Scheuer, Goldner, Coleman, Strickland, or HomeCorp Management .

### 2.    *Entity Purchase Exclusion*

Continental Casualty also argues it has no duty to defend under the Policy's entity purchase exclusion.  Under this exclusion, Continental Casualty has no duty to defend "any claim . . . based on or arising out of the formation, syndication, operation or administration of any property syndication, real estate investment trust or any other form of corporation, general or limited partnership or joint venture formed for the purpose of investing in, buying, selling, or maintaining real property."  (Policy ¶ V.I.)  "Any claim" renders this a claim-based exclusion, not an insured-based exclusion.  The exclusion is concerned with the nature of the claim, not the name or identity of the insured.

The claims clearly arise out of the operations of HomeCorp Affordable, and this exclusion denies a defense to any claim arising out of that operation.  First, HomeCorp Affordable, as an LLC, qualifies as "any other form" of corporation or partnership and was formed for the purpose of purchasing and developing residential properties.  *See* Ala. Code § 10A-5-1 *et seq.*; *United States v. Hagerman*, 545 F.3d 579, 581 (7th Cir. 2008) ("Limited liability companies are a relatively new business structure allowed by state statute, having some features of corporations and some features of

23

partnerships."  (internal quotation marks omitted)).  Second, the claims in the underlying lawsuits arise out of HomeCorp Affordable obtaining financing and acquiring Oak Creek Apartments.  Thus, this exclusion also applies to deny a defense to HomeCorp Management, Scheuer, Goldner, Coleman, and Strickland under the Policy.

### 3.    *Property Development Exclusion*

Finally, Continental Casualty argues that a third exclusion cancels its duty to defend.  Under the Policy's property development exclusion, Continental Casualty has no duty to defend "any claim . . . based on or arising out of the Insured's interests, operations, or activities as . . . [a] property developer."  (Policy ¶ V.O. (emphasis omitted).)  This exclusion applies because the claims arise out of Scheuer's, Goldner's, Coleman's, and Strickland's interests, operations, or activities as property developers.

Defendants argue that HomeCorp Management acted as a property management company and not as a property developer in relation to Oak Creek Apartments.  Defendants further argue that the claims against Scheuer, Goldner, Coleman, and Strickland are in their capacities as officers or representatives of HomeCorp Management, the property manager.  (Def.'s Resp. Br. 23–26.)  However, the *Blumberg* and *Hart* Actions also assert claims against Scheuer, Goldner, Coleman, and

Strickland in their capacities as the managing members of HomeCorp Affordable *(See, e.g.*, *Blumberg* Action Second Am. Compl. ¶ 70; *Hart* Action Second Am. Compl. 116.) The claims against Scheuer, Goldner, Coleman and Strickland arise out of their interests as property developers: They formed HomeCorp Affordable to develop property; they used HomeCorp Affordable to enter into a contract to purchase Oak Creek Apartments; they executed guaranties to obtain financing for the project; and they persuaded other members of HomeCorp Affordable to sign guaranties to obtain the needed financing. Thus, this exclusion applies to the claims asserted against Scheuer, Goldner, Coleman, and Strickland.

## VI. CONCLUSION

For the foregoing reasons, it is ORDERED that Continental Casualty's Motion for Summary Judgment (Doc. # 69) is GRANTED in part and DENIED in part as follows:

1. Continental Casualty's claim that it has no duty to indemnify is DISMISSED without prejudice;

2. Continental Casualty's Motion for Summary Judgment (Doc. # 69) on its claim that it has no duty to defend is GRANTED; and

3. HomeCorp Management's counterclaim is DISMISSED with prejudice.

It is further DECLARED that the Real Estate Professional Errors and Omissions Policy, Policy No. 25414965709, issued by Continental Casualty Company to HomeCorp Management, Inc., does not impose on Continental Casualty Company any duty to defend HomeCorp Management, Inc., Herbert Scheuer, Michael Goldner, Stephen Coleman, or W. Lloyd Strickland in the case of *Hart et al. v. CWCapital, LLC, et al.*, CV-09-900311, pending in the Circuit Court of Houston County, Alabama, or in the case of *Blumberg et al. v. CWCapital, LLC, et al.*, CV-09-900305, pending in the Circuit Court of Houston County, Alabama.

A separate final judgment will be issued.

DONE this 29th day of March, 2012.

        /s/ W. Keith Watkins
        CHIEF UNITED STATES DISTRICT JUDGE

26